IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TAMARIAN CARPETS, LLC, :

    Plaintiff, :

v. :
                              Civil Action No. GLR-12-2571

AHMADI & SONS, INC., :

    Defendant. :

                         :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiff's, Tamarian Carpets, LLC ("Tamarian"), Motion for Leave to File Surreply (ECF No. 17) and Defendant's, Ahmadi & Sons, Inc. ("Ahmadi"), Motion to Dismiss (ECF No. 9) Tamarian's Complaint. This case involves Ahmadi's alleged internet based advertisement, sale, or offer to sell rugs of similar make and model to Tamarian's copyrighted designs.

The issues have been fully briefed and the Motion is ripe for disposition. No hearing is necessary. See Local Rule 105.6 (D.Md. 2011). As outlined in specific detail below, the Court will deny Tamarian's Motion for Leave to File Surreply because Ahmadi's Reply did not introduce a new issue or matter of law requiring a response from Tamarian. Furthermore, the Court will grant Ahmadi's Motion to Dismiss for lack of personal jurisdiction because Tamarian fails to show that Ahmadi's

contacts with Maryland are of such a continuous, purposeful, and substantial nature to confer jurisdiction.

## I. BACKGROUND[1]

Tamarian is in the business of designing, manufacturing, and selling specially manufactured Tibetan rugs. Its principal place of business is Baltimore, Maryland, and it sells rugs only to approved distributors. The company neither advertises on the internet nor permits distributors to advertise or sell its rugs on the internet using the Tamarian name and trademark.

Ahmadi is in the business of retail sales of carpet, rugs, and flooring. Ahmadi runs a retail store in New York from which it conducts the majority of its business. (Def.'s Mot. Dismiss at 5-7, ECF No. 9-1). Its principal place of business is also New York, where it trades as Fovama, Fovama Oriental Rug Gallery, Fovama Oriental Rugs, and Accent Area Rugs. Ahmadi is the registrant of two websites, www.fovama.com and www.accentarearugs.com (collectively, "websites").

Customers from anywhere in the United States may order a rug through the websites and have it shipped to an address of their choosing. Ahmadi's websites allow customers to search and view images of rugs and chat with a representative through a "chat support" function. When the company owner, Hossein

---

[1] Unless otherwise noted, the following facts are taken from the Complaint.

Ahmadi, does not personally log onto the chat line, a customer or website visitor cannot chat with anyone from Ahmadi. (Ahmadi Suppl. Aff. at 2, ECF No. 16-1). Mr. Ahmadi has used the chat no more than five times over the past five years. (Id.) There is no evidence to suggest the websites' operations occur in Maryland.

From 2008 to 2012, Ahmadi completed fourteen transactions, worth $7,076, with Maryland residents. In 2010, Ahmadi made one sale in Maryland valued at $209, less than one percent of its online sales that year. (Ahmadi Suppl. Aff. at 2). In 2012, Ahmadi recorded six online sales with Maryland customers valued at $1,922.80, five percent of its online sales. (Id.) One such customer, Kathleen Lauth, purchased a $70 rug through the websites. (Lauth Suppl. Aff. at 1, ECF No. 14-3). Jennifer Wiley, another Maryland resident, paid a $2,250 deposit for a $3,850 rug in 2012. (Wiley Suppl. Aff. Ex. A, ECF No. 14-2). Ms. Wiley contacted Ahmadi through email to initiate the purchase; however, she never furnished the final payment and the sale was never completed. (Ahmadi Suppl. Aff. at 3). Ms. Wiley's transaction is not included in the 2012 online sale numbers because it was conducted through email.[2]

---

[2] Furthermore, Ms. Wiley's transaction was never completed, another reason why it likely was not included in the online sales figures. (See Ahmadi Suppl. Aff. at 3).

Tamarian filed its Complaint on August 27, 2012, alleging Trademark Infringement (Count I), Federal Unfair Competition (Count II), Common Law Trademark Infringement (Count III), Trafficking in Counterfeit Marks (Count IV), Violation of a Copyright (Count V), Conversion (Count VI), and Unjust Enrichment (Count VII). (ECF No. 1). Ahmadi moved to dismiss the Complaint on April 8, 2013. (ECF No. 9). Thereafter, on April 26, 2013, Tamarian filed an Opposition, and Ahmadi filed a Reply on May 13, 2013. (ECF Nos. 14, 16). On May 20, 2013, Tamarian moved to file leave for surreply, to which Ahmadi filed an Opposition on June 6, 2013. (ECF Nos. 17-18).

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. When a non-resident defendant challenges a court's power to exercise jurisdiction, "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md. v. Carefirst Pregnancy Ctrs. Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). A plaintiff need only make a prima facie case for personal jurisdiction when the court decides the motion without an evidentiary hearing. Id. (citation omitted). "[T]he court must take all disputed facts

4

and reasonable inferences in favor of the plaintiff."  Id. (citation omitted).

**B. <u>Analysis</u>**

   **1. Motion for Leave to File Surreply**

This Court will deny Tamarian's Motion for Leave to File Surreply because Ahmadi does not introduce any new information in its Reply to Tamarian's Opposition to the Motion to Dismiss that Tamarian previously did not have an opportunity to address.

"Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a) (D.Md. 2011). Typically, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." <u>Khoury v. Meserve</u>, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citation omitted).

In its Reply to Tamarian's Opposition to the Motion to Dismiss, Ahmadi argues that its websites' activities do not give rise to jurisdiction in Maryland and that Tamarian tried to manufacture jurisdiction through online sales initiated by Tamarian or Tamarian's counsel. (Def.'s Mem. Reply to Pl.'s Opp'n at 1-7, ECF No. 16). Ahmadi makes the same argument in its Motion to Dismiss. (<u>See</u> Def.'s Mot. Dismiss at 5-7). Ahmadi's statements regarding Tamarian's alleged attempts to

manufacture jurisdiction are presented for the first time; however, Tamarian does not address this issue in its Motion for Leave to File Surreply. (See Pl.'s Mot. for Leave to File Surreply, ECF No. 17). Therefore, Ahmadi "did not raise any new issues or legal theories in [its] reply brief that Plaintiff seek[s] to rebut in [its] surreply . . . ." Interphase Garment Solutions, LLC v. Fox Television Stations, Inc., 566 F.Supp.2d 460, 467 (D.Md. 2008). Tamarian, however, takes issue with the data Ahmadi provides in the Supplemental Affidavit of Hossein Ahmadi.

Ahmadi provided documents, which state that sales numbers reflect transactions "placed on the" websites. (Ahmadi Suppl. Aff. at 1). The information provided is the same as the original affidavit by Mr. Ahmadi, except Mr. Ahmadi provides the quantity of Maryland transactions for each year. (Compare id. at 2, 6-11, with Def.'s Mot. to Dismiss Ex. A). These new numbers do not introduce a "new matter" or issue requiring an additional response from Tamarian. See Khoury, 268 F.Supp.2d at 606.

As a result, the Court will deny Tamarian's Motion for Leave to File Surreply.

**2. Motion to Dismiss**

The Court will grant Ahmadi's Motion to Dismiss because Ahmadi's contacts with Maryland were not continuous and

systematic. Moreover, Ahmadi's contacts with Maryland were too limited in nature to confer jurisdiction.

A federal court's ability to exercise personal jurisdiction over a non-resident defendant relies on a state's long-arm statute and the due process limits of the U.S. Constitution. See Shamsuddin v. Vitamin Research Prods., 346 F.Supp.2d 804, 807 (D.Md. 2004) (citation omitted). Maryland courts "have consistently held that the state's long-arm statute is coterminous with the extent of jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment." Young Again Prods., Inc. v. Acord, 307 F.Supp.2d 713, 715 (D.Md. 2004) (citation omitted). "Although the statutory and constitutional inquiries merge, the Court must address both elements in the personal jurisdiction analysis." See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc., 888 F.Supp.2d 691, 698 (D.Md. 2012) (citing Dring v. Sullivan, 423 F.Supp.2d 540, 545 (D.Md. 2006)).

The court may exert general jurisdiction over a defendant even when the cause of action is unrelated to the defendant's actions with the forum state. Shamsuddin, 346 F.Supp.2d at 807. General jurisdiction requires that a defendant have continuous and systematic contacts with the forum state. Id. (citation omitted). Alternatively, specific jurisdiction permits the exercise of personal jurisdiction over a defendant when the

7

cause of action arises from or relates to the defendant's actions in the state. Id. In the context of electronic activity, a court must examine whether the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a cause of action . . . ." ALS Scan v. Digital Serv. Consultants, 293 F.3d 707, 714 (4th Cir. 2002).

### a. Maryland Long-Arm Statute

The Maryland long-arm statute does not apply to this case because § 6-103(a) limits the statute's reach. The subsection states that "[i]f jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." Md. Code Ann., Cts. & Jud. Proc. § 6-103(a) (West 2013).

Tamarian contends the relevant subsections in this case permit this Court to exercise jurisdiction when a person:

> (1) [T]ransacts any business or performs any character of work or service in the State . . . (3) Causes tortious injury in the State by an act or omission in the State; [or] (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

§ 6-103(b)(1)-(4).

Section 6-103(b)(1) does not apply because Tamarian's cause of action does not arise out of Ahmadi's business or work in Maryland. The record provides that Ahmadi never sold or offered for sale a counterfeit Tamarian rug in Maryland. (Ahmadi Suppl. Aff. at 4). Furthermore, Ms. Wiley never completed her purchase of the Tamarian rug, which was lawfully purchased by Ahmadi from a distributor. (Ahmadi Suppl. Aff. Ex. A-4; see also Wiley Suppl. Aff. Ex. A) (noting the paid rug deposit but missing any information showing completion of the outstanding payment).

Tamarian's strongest argument rests with § 6-103(b)(3). "The object of Ahmadi's [infringement] is the transmission of Website information that Tamarian claims is the infringement of its trademark and copyrights. When these messages are transmitted into Maryland and viewed by Maryland residents on their computers[,] . . . the trademark infringement occurs in Maryland." (Pl.'s Mem. in Opp'n Def.'s Mot. to Dismiss ["Pl.'s Mem."] at 15, ECF No. 11-1). This subsection, however, "requires that both the tortious injury and the tortious act must have occurred in Maryland." Dring, 423 F.Supp.2d at 546 (citation omitted). While the alleged injuries may have occurred in Maryland when residents of the State accessed the copyrighted images, there is no evidence to suggest that Ahmadi committed, in Maryland, the tortious act of uploading the copyrighted images. Tamarian uses the phrase "transmitted into

Maryland," which suggests Tamarian acknowledges the alleged copyrighted images originated outside of Maryland. (Pl.'s Mem. at 15).

Furthermore, evidence shows Mr. Ahmadi operates the websites from New York. In his supplemental affidavit, Mr. Ahmadi states he is the only one who mans the website chat support function, a fact which Tamarian apparently concedes. (See Ahmadi Suppl. Aff. at 2; see also Pl.'s Mot. for Leave to File Surreply at 1-2) (failing to raise an issue related to Mr. Ahmadi's description of the chat support function). It is reasonable to believe the websites' operations occur in New York, the principal place of business, because Mr. Ahmadi must "personally man the chat line." (Ahmadi Suppl. Aff. at 2). Otherwise "it is impossible for any visitor . . . to chat with a representative . . . ." (Id.)

Finally, § 6-103(b)(4) does not apply. Ahmadi's business with Maryland is irregular and his contacts do not rise to the level of a "persistent source of conduct." § 6-103(b)(4); see also Metro. Reg'l Info. Sys., Inc., 888 F.Supp.2d at 698 (requiring greater contacts for § 6-103(b)(4) than contacts necessary to establish jurisdiction under § 6-103(b)(1)). It would be unreasonable to say fourteen sales over five years to Maryland residents rise to the requisite level intended under this subsection.

Therefore, the long-arm statute is inapplicable to the circumstances and cannot confer jurisdiction over Ahmadi.

### b. Due Process

Even if Tamarian could show the long-arm statute applies to Ahmadi's contacts with Maryland, Tamarian must show that jurisdiction complies with constitutional due process. Metro. Reg'l Info. Sys., Inc., 888 F.Supp.2d at 698 (noting the court must discuss both the long-arm statute and the scope of jurisdiction allowed under the Due Process Clause). This Court's extension of jurisdiction over Ahmadi would violate due process and "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted).

### i. General Jurisdiction

Ahmadi's contacts with Maryland do not satisfy the "continuous and systematic" threshold necessary to establish general jurisdiction. See id. at 712 (citation omitted).

Ahmadi conducted fourteen transactions representing four percent of online sales with Maryland customers over the past five years. (Ahmadi Suppl. Aff. at 2). Only one sale occurred in 2010, which accounted for less than one percent of the company's online revenue for that year. (Id.) The limited number and sporadic nature of online sales are not enough to establish general jurisdiction. See, e.g., Robbins v. Yutopian

11

Enters., 202 F.Supp.2d 426, 429 (D.Md. 2002) (finding no basis for general jurisdiction despite defendant engaging in forty-six sales through its website with Maryland residents over ten and a half months).

Additionally, the revenue Ahmadi generated in Maryland does not support general jurisdiction. Tamarian cites two 2012 Maryland transactions totaling $3,920 in support of its argument for general jurisdiction.[3] (Pl.'s Mem. at 10). Tamarian contends these two transactions alone represent $1,997.20 more than the $1,922.80 Ahmadi claims from 2012. This total is at odds with Ahmadi's 2012 sales calculations. Taking the factual dispute in favor of the plaintiff, the revenue generated in Maryland is too insignificant to establish general jurisdiction. See, e.g., Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1198, 1200 (4th Cir. 1993) (declining to exercise personal

---

[3] Ahmadi argues these two transactions are an attempt by Tamarian to manufacture personal jurisdiction. (See Def.'s Mem. Reply to Pl.'s Opp'n at 1-3). Jennifer Wiley unilaterally contacted Ahmadi through email, placed a deposit on a carpet, and ceased contact with Ahamdi until a week after Plaintiff's counsel filed the Motion to Dismiss. (Id.) Jennifer Wiley allegedly lives across from Plaintiff's counsel. (Id.) Kathleen Lauth is a legal assistant for Plaintiff's counsel, according to her public Facebook page. (Id. Ex. B at 3). Tamarian does not contest Ahmadi's claim in its Motion for Leave to File Surreply. Courts have specifically refused to exercise jurisdiction where sales were manufactured by counsel to establish jurisdiction. See DeSantis v. Hafner Creations, Inc., 949 F.Supp. 419, 424-25 (E.D.Va. 1996). Accordingly, this Court will not consider these sales for purposes of establishing jurisdiction.

12

jurisdiction over a defendant who made over $9 million in sales in Maryland from 1983 to 1987).

### ii. Specific Jurisdiction

Constitutional due process prevents the Court from exercising specific jurisdiction over Ahmadi. See ALS Scan, 293 F.3d at 714 (noting the Court must confine its specific jurisdictional analysis to activity directed at and causing injury in Maryland).

Tamarian claims Ahmadi caused a tortious injury in Maryland by advertising, selling, or offering for sale rugs on the internet, which contained Tamarian's copyrighted designs. Ahmadi, however, did not "knowingly transmit infringing photographs specifically to Maryland with the intent of engaging in business . . . in Maryland." Id. Ahmadi did not direct its advertising or marketing towards Maryland, and the websites specifically state the company serves New York, New Jersey, and Connecticut. (Def.'s Mot. to Dismiss at 2). Ahmadi claims that it never sold or offered for sale a counterfeit Tamarian rug in Maryland. (Ahmadi Suppl. Aff. at 4). The websites are accessible to all Maryland residents; however, reliance on this fact for personal jurisdiction would erode the idea that a state has "geographically limited judicial power." ALS Scan, 293 F.3d at 712. Anyone placing copyrighted information on the internet would be subject to personal jurisdiction in every state where

that information was accessed. See id.

Tamarian relies heavily on Zippo Mfg. Co. v. Zippo Dot Com Inc., in support of the argument that Ahmadi's posting of copyrighted information caused injury in Maryland. See 952 F.Supp. 1119 (W.D.Pa. 1997). Although Zippo Mfg. is persuasive, it is not binding on this Court. Regardless, Zippo Mfg. is distinguishable from the case at bar. In that case, the defendant, Zippo Dot Com ("Dot Com"), operated an interactive website and sent news messages to subscribers.[4] Id. at 1121. The nature of the trademark claim arose from Dot Com's use of "Zippo" in its domain names and on downloadable news messages. Id. (noting "Zippo" appears under the "Organization" heading on the message). The court found jurisdiction because Dot Com continually processed Pennsylvania resident's applications for the news service, resulting in the transmission of messages containing the trademarked name into the forum state. Id. at 1126. Ahmadi's contacts with Maryland, however, never resulted in the sale and delivery to Maryland of a trademarked Tamarian rug.

---

[4] Ahmadi's websites are semi-interactive, "through which there have not occurred a high volume of transactions between [the defendant] and residents of [the state], yet which do enable users to exchange information with the host computer." Carefirst, 334 F.3d at 399. Jurisdiction based on these websites depends on "the level of interactivity and commercial nature of the exchange of information that occurs." Id. (citing Zippo Mfg., 952 F.Supp. at 1124).

Ahmadi may have posted copyrighted images on its websites; however, this is different than actively transmitting messages containing copyrighted information into a forum state. (See Pl.'s Mem. at 14); see also Zippo Mfg., 952 F.Supp. at 1126 (discussing Dot Com's sale of passwords to 3000 subscribers). The former amounts to posting information on a website accessible to residents in every state, while the latter shows a targeted business plan by a defendant to avail itself of the benefits of the forum state.

Tamarian also compares Dot Com's "seven provider customers" in Pennsylvania to Ahmadi's two alleged Maryland customers in 2012 and fourteen Maryland sales from 2009 to 2012. (Pl.'s Mem. at 14). Tamarian omits key language in this reference. Dot Com's seven customers were *internet access providers*. Zippo Mfg., 952 F.Supp. at 1121 (emphasis added). The relationship with the provider companies assured Dot Com would have access to all Pennsylvania residents served by these providers. Tamarian does not allege Ahmadi contracted with Maryland internet service providers to ensure Maryland residents could access its servers or websites. Furthermore, it is not alleged Ahmadi contracted with Maryland distributors, companies similar in function to an internet access provider, to increase its ability to reach Maryland customers.

Tamarian cannot support an argument for specific jurisdiction because Ahmadi neither targeted Maryland nor created a cause of action within Maryland.

Accordingly, the Court will grant Ahmadi's Motion to Dismiss for lack of jurisdiction.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Tamarian's Motion for Leave to File Surreply (ECF No. 17) and GRANTS Ahmadi's Motion to Dismiss (ECF No. 9) for lack of personal jurisdiction. A separate Order follows.

Entered this 16th day of July, 2013

_____/s/_____
George L. Russell, III
United States District Judge